UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-vs-

JOHN GALLINA,

Defendant

DOCKET NO.: CR-95-438 (S-1)
Brooklyn, New York
December 19, 1995
12:00 p.m.

TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING

BEFORE THE HONORABLE RAYMOND J. DEARIE
UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S:

For the Government:            JO ANN NAVICKAS, ESQ.
                               U.S. Attorney's Office
                               225 Cadman Plaza East
                               Brooklyn, NY  11201


For the Defendant:             SCOTT YALE AUSTER, ESQ.
                               71 Murray Street
                               New York, NY  10007




Audio Operator:                Monique Hawkins

Proceedings Recorded by Electronic Sound Recording
Transcript Produced by Transcription Service

**PARSLEY ASSOCIATES INC**
328 Flatbush Avenue, Suite 251
Brooklyn, NY  11238
(718) 789-0620



K. Rusin

```
1                    I N D E X

2                                                    PAGE

3    John Gallina, the Defendant, Sworn              3



4                      EXHIBITS

5                                        Marked    Entered

6    C-8        Plea Agreement            12         /
```

K. Rusin                                    Parsley Associates Inc



1          THE CLERK:  United States of America versus John

2    Gallina, docket number 95-CR-438 (S-1).  Counsel, please state

3    your appearances for the record.

4          MS. NAVICKAS:  Jo Ann Navickas for the Government.

5          MR. AUSTER:  Scott Auster for the defendant.  Good

6    morning, Your Honor.

7          THE COURT:  Good morning.

8          MR. AUSTER:  Good afternoon, actually.

9          THE COURT:  Good morning.  Folks, are we ready to

10   proceed?

11         MS. NAVICKAS:  Yes, Your Honor.

12         MR. AUSTER:  Yes, Your Honor.

13         THE COURT:  I understand you've arrived at a

14   disposition?

15         MR. AUSTER:  Yes.

16         THE COURT:  All right.  Swear the defendant.

17         THE CLERK:  Please raise your right hand.

18         JOHN GALLINA, THE DEFENDANT, SWORN

19         THE COURT:  Mr. Gallina, I have to ask you a number of

20   questions, as I'm sure Mr. Auster has told you.  If you don't

21   understand any of my questions, if I don't make myself clear to

22   you, don't hesitate to tell me that, and I'll do my best to

23   clarify the question, all right, sir?

24         THE DEFENDANT:  Okay.

25         THE COURT:  And if you wish to confer with counsel at

```
 1    any time, simply ask me, and I'll give you whatever time you
 2    need to confer, privately if necessary, with Mr. Auster, all
 3    right, sir?
 4              THE DEFENDANT:  Okay.
 5              THE COURT:  You should also bear in mind as we proceed
 6    that you are now under oath.  That means that your answers to my
 7    questions must be truthful.  If they were not in any material
 8    way, you could subject yourself to further prosecution for the
 9    offense of perjury, which is lying while under oath.  Do you
10    understand that?
11              THE DEFENDANT:  Okay, yes.
12              THE COURT:  All right.
13    BY THE COURT:
14    Q    How old are you, sir?
15    A    Thirty two.
16    Q    And what's your full name?
17    A    Giovanni Gallina.
18    Q    And how far did you get in school?
19    A    I did it in Italy.
20    Q    You did it in Italy.  How much did you do in Italy?
21    A    About eight years.
22    Q    About eight years.  Do you read and write in Italian, of
23    course?
24    A    Um hmm.
25    Q    How about English?
```



1    A    Nope, just a real little bit.

2    Q    All right.  Do you have any difficulty understanding me?

3    A    No, I understand.

4         THE COURT:  Mr. Auster, have you had any language

5    difficulties with your client?

6         MR. AUSTER:  None whatsoever, Judge.

7         THE COURT:  No concern about an interpreter or any of

8    that?

9         MR. AUSTER:  No, just speak — he has to speak a

10   little slower, and I typically speak a little slower, just to

11   make sure we're understood.

12        THE COURT:  Okay.

13   BY THE COURT:

14   Q    If there's anything I say that is not crystal clear to you

15   — this is an important proceeding, Mr. Gallina; I don't have to

16   tell you that — tell me, —

17   A    Okay.

18   Q    — so we can make sure that you understand everything that

19   is being said.  You certainly don't appear to have any

20   difficulty following me.  Are you currently or have you recently

21   been under the care of a physician or psychiatrist?

22   A    No.

23   Q    Have you, in the last 24 hours, had any pills, drugs,

24   alcohol, anything of that sort?

25   A    No.



1    Q    Have you ever had a problem with drugs or alcohol, —

2    A    Yeah.

3    Q    — substance abuse?

4    A    Yeah, cocaine.

5    Q    How long ago?

6    A    I used to do it for like five or six years.

7    Q    Five or six years?

8    A    Until I got arrested.

9    Q    When did you stop?

10    A    When I got arrested.

11    Q    I see.  And since that time —

12    A    Yes, sir.

13    Q    — you've been able to steer clear of it?

14    A    Once in a while.

15    Q    Um hmm.  Are you able to concentrate on what I'm saying to

16    you?  Are you able to concentrate on what I'm saying to you?

17    A    Yeah, I understand what — I understand.

18         THE COURT:  Have you, Mr. Auster, at any time had

19    difficulty communicating with him for any reason?

20         MR. AUSTER:  No, Your Honor.  No.

21         THE COURT:  Are you satisfied that he understands the

22    rights he'll be waiving by pleading guilty?

23         MR. AUSTER:  Yes.

24         THE COURT:  Is he, in your judgment, competent to

25    proceed and capable of understanding the nature of these



```
1    proceedings?
2              MR. AUSTER:  Yes.
3    BY THE COURT:
4    Q    Are you satisfied, Mr. Gallina, with the representation
5    that Mr. Auster has provided to you in this case?
6    A    Yes.
7    Q    Do you wish to have him continue in his role as your
8    attorney?
9    A    Yes.
10   Q    All right.   You have, of course, an absolute right to
11   continue in your plea of not guilty.  You understand that, don't
12   you?
13   A    Yeah.
14   Q    No one could make you — excuse me.  No one can make you
15   plead guilty, not your attorney, not the United States Attorney.
16   You have an absolute right to plead not guilty, even if you are
17   guilty.  It would be entirely proper and appropriate exercise of
18   your rights to put the Government to the burden of proving your
19   guilt.  Do you understand that?
20   A    Yes.
21   Q    Okay.   In fact, if you were to continue to plead not
22   guilty, you'd be entitled to a speedy and public trial, by jury,
23   with the assistance of counsel, on the charges reflected in the
24   indictment.  Do you understand that?
25   A    I didn't get it.
```



1    (Off the record discussion between Defendant and Counsel)

2    THE DEFENDANT:  Yeah, I understand.

3    THE COURT:  All right.

4  BY THE COURT:

5  Q    At trial, you'd be presumed innocent, as I would instruct

6  the  jury.   The  Government  would  have  to  overcome  this

7  presumption  of  innocence  and  prove  you  guilty  by  competent

8  evidence  and  beyond  a  reasonable  doubt.   You  would  not  be

9  required to prove that you were innocent.  In fact, you wouldn't

10  be required to prove anything.  You could sit back, do nothing,

11  say  nothing,  simply  put  the  Government  to  the  burden  of

12  attempting to satisfy the jury of your guilt, as I say, beyond

13  a reasonable doubt.  Do you understand that, sir?

14  A    Yes.

15  Q    That means, as a practical matter, that if the Government

16  were to fail, technically or otherwise, to meet that burden, the

17  jury would be required under my instructions to find you not

18  guilty.  Do you understand that?

19  A    Yes.

20  Q    Now,  in  the  course  of  any  trial,  witnesses  for  the

21  Government would have to come here to court and testify under

22  oath, in your presence, and in the presence, obviously, of your

23  attorney.  You would have the right, therefore, to confront each

24  of these witnesses face to face here in open court.  You would

25  have the right, through counsel, to cross examine each of the



1  Government's witnesses, and, when appropriate, to object to

2  evidence offered by the Government.  Do you understand that?

3  A    Yes.

4  Q    You would have the right to offer evidence in your own

5  defense, and in that regard, you'd have the right to compel the

6  attendance of witnesses and the production of potential evidence

7  through the issuance of judicial process, something we commonly

8  refer to as a subpoena.  Do you understand that?

9  A    Yes.

10  Q    You would have the right to testify at trial.  You would

11  also have a right not to testify at trial.  No one could make

12  you testify, not your attorney, not the United States Attorney,

13  not the Court.  That is your decision, and if you decided, in

14  consultation with counsel, to avail yourself of your right not

15  to testify, and if counsel requested it, as he very well might,

16  I would instruct the jury in the strongest possible terms that

17  under no circumstances could they, the jury, hold your decision

18  against you.  Do you understand that?

19  A    Yes.

20  Q    All right.  Now, if you plead guilty, and I accept your

21  plea, you'd be giving up these rights that I've just outlined.

22  Do you understand that?

23  A    Yes.

24  Q    You'll give them up forever.  Do you understand that?

25  A    Yes.

K. Rusin                                    Parsley Associates Inc  

1    Q      You give up, among others, your constitutional right to a

2    trial.  There will be no trial.  Do you understand that?

3    A      Yes.

4    Q      With the possible exception of sentence, which I'll explain

5    shortly, there is no right to an appeal.  I will simply enter a

6    judgment of guilty based upon your plea of guilty, based upon

7    what you tell me.  Do you understand that?

8    A      Yes.

9    Q      And finally, you should understand that before I can

10   actually accept your plea, I am required under the Federal Rules

11   of Criminal Procedure to satisfy myself that you are, in fact,

12   guilty of the offense charged.  To do that, momentarily I will

13   ask you a few questions.  In responding to my questions, you

14   should understand you have — you'll be called upon, I should

15   say — excuse me just one second.  [Pause]  You'll be called

16   upon to acknowledge here in open court your guilt, and in doing

17   that, you'll give up your right to remain silent and your

18   constitutional right not to incriminate yourself.  Do you

19   understand that?

20   A      Yes.

21   Q      Are you willing, then, to give up your right to a trial and

22   these other rights that I have just explained?

23   A      Yes.

24   Q      You should also understand, Mr. Gallina, that by pleading

25   guilty, you give up — again, forever — any opportunity that

K. Rusin                                              Parsley Associates Inc   

1    you might otherwise have to challenge the Government's case, to

2    seek the suppression of evidence, dismissal of charges, or any

3    other relief that the law might otherwise entitle you to by

4    legal motion to the Court.   Do you understand that?

5    A    Yes.

6    Q    To the extent that motions have already been filed on your

7    behalf, they are withdrawn by virtue of your guilty plea.   Do

8    you understand that?

9    A    Yes.

10   Q    I have a copy of an agreement, the original of which I

11   assume has been marked as Court Exhibit 1.   If it hasn't, please

12   do so mark it.   Excuse me a second.

13        (Off the record discussion between the Court and Clerk)

14             THE COURT:   I'm sorry.

15   BY THE COURT:

16   Q    First of all, ——

17             THE CLERK:   It's got to be executed.

18             THE COURT:   Okay.  [Pause]  The record should reflect

19   that the defendant is, at this moment, executing the plea

20   agreement.   It will be marked as Court Exhibit 7 to correspond

21   with Mr. Gallina's position on the list of —— no, this doesn't

22   work.   Why seven?

23             THE CLERK:   It's number seven on 438.

24             THE COURT:   Four thirty eight?   Not seven on my 438.

25   He's eight.   Is this a superseder?

K. Rusin                                    Parsley Associates Inc   

1    MS. NAVICKAS: Your Honor, it is a superseder.

2    THE COURT: Ah. Well, that may be ——

3    MS. NAVICKAS: The underlying is 1236.

4    THE COURT: Oh, 438 is a superseder to 1236?

5    MS. NAVICKAS: Yes.

6    THE COURT: I have him as eight. One, two, three,

7    four, five, six, seven, eight. Correct, or not?

8    MS. NAVICKAS: The eighth defendant, yes.

9    THE COURT: Mr. Soric has a little difficulty with the

10   first ten —— after he gets beyond ten, he's fine, but ——

11   MS. NAVICKAS: The fourth defendant has been

12   dismissed. I don't know whether that plays any part.

13   THE COURT: Don't speak up in his defense.

14   MS. NAVICKAS: Okay.

15   THE COURT: The man is eighth on the indictment. It

16   will be Court Exhibit 8. Fair enough.

17   (Court Exhibit 8, Plea Agreement, Marked)

18   BY THE COURT:

19   Q    Now, you signed this moments ago, Mr. Gallina. Have you

20   carefully reviewed it with your attorney, the agreement?

21   A    Yeah, yeah.

22   Q    Do you understand this is an important document for you?

23   A    Yes.

24   Q    Are you fully satisfied that you understand everything

25   that's contained in the agreement?

1  A    Yes.

2  Q    Do you have any questions of the Court or of your attorney

3  about anything contained in the agreement?

4  A    No.

5  Q    As far as you understand, is the agreement complete, in

6  that is your agreement with the United States Attorney fully

7  reflected in writing in plea agreement Court Exhibit 8?  Is it

8  all in writing?

9  A    Yeah.

10  Q    Okay.

11          THE COURT:  Mr. Auster, can you confirm that?

12          MR. AUSTER:  Yes, Your Honor, it does.

13          THE COURT:  And Ms. Navickas?

14          MS. NAVICKAS:  Yes, Your Honor.

15          THE COURT:  All right.  We'll come back to that

16  momentarily.  This is Count 26.  It charges in or about and

17  between October 1992 and November 16, 1994, both dates being

18  approximate and inclusive, within the Eastern District of New

19  York and elsewhere, the defendants Salvatore Candella, Giuseppe

20  Bonella, John Gallina, and Antonia Gambino, together with

21  others, knowingly and intentionally conspired to distribute and

22  to possess with intent to distribute heroin and cocaine,

23  Schedule I and Schedule II narcotic drug controlled substances,

24  in violate of Title 21 United States Code section 841(a)(1).

25  BY THE COURT:

K. Rusin                              Parsley Associates Inc

1    Q     Have you reviewed this charge, Mr. Gallina, with your

2    attorney?

3    A     Yes.

4    Q     Do you feel confident that you understand what it is that

5    you're charged with in Count 26?

6    A     Yes.

7    Q     You are charged with a conspiracy.  Tell me what your —

8    what is your understanding as to the nature of a conspiracy?

9    What is a conspiracy?

10   A     That I was dealing drugs, heroin and cocaine.

11   Q     A conspiracy is an agreement, an illegal agreement, with at

12   least one other person, to do something the law forbids.  In

13   this instance, that something is to distribute or possess with

14   intent to distribute heroin and cocaine.  But the crime is the

15   agreement itself.  Once you agree to do that, even if you never

16   distributed or possessed an ounce thereafter, once you agreed,

17   that crime is complete.  Do you understand that?

18   A     Yes.

19   Q     Okay.  Now, if I can refer back momentarily to the plea

20   agreement, and review with you, first of all, the maximum

21   sentence you face pursuant to statute, you face a maximum term

22   of imprisonment, as your agreement indicates, of 20 years.  Do

23   you understand that?

24   A     Yes.

25   Q     You face a period of at least three years' supervised

K. Rusin                                              Parsley Associates Inc  

1    release, at least three years.  There is no maximum.  I could

2    put you on supervision for the rest of your life.  Supervised

3    release is a period of supervision that begins to run when you

4    are released from federal custody.  If you were to violate the

5    terms and conditions of your supervised release at any point in

6    time during the period of supervision, you could be returned to

7    prison for the period of supervision, and that is without any

8    credit being given to you for the time that you've spent at

9    liberty under supervision.  Do you follow that?

10   A    Yes.

11   Q    Have you talked to Mr. Auster about this?

12   A    Yes.

13   Q    Okay.  Now, I should note in your case you are not an

14   American citizen, is that correct?

15   A    No.

16   Q    No, you are not.

17   A    I'm just —— I have a green card.  Resident.

18   Q    Okay.  There is a strong possibility, as a result of your

19   conviction in this case, that you will be deported upon your

20   release from custody.

21   A    Yes.

22   Q    Nevertheless, the sentence will include a period of at

23   least three years' supervised release.  Do you follow?

24   A    Yes.

25   Q    So, for example, if you were to return illegally to the

K. Rusin                                        Parsley Associates Inc   

1    United States after deportation, that would be a violation of

2    the terms and conditions of your supervised release, and under

3    the terms of my sentence in this case, you could be returned to

4    prison for that period of supervision.  Do you follow?

5    A    Yes.

6    Q    Okay.  You also face a fine authorized by statute in an

7    amount not to exceed $1 million.  A special assessment of $50

8    will also be included, as is required by law.  Do you

9    understand?

10    A    Yes.

11    Q    All right.  Are you aware, sir, that there are certain

12    sentencing guidelines that the Court is obligated to apply in

13    determining an appropriate sentencing range in your case?

14        (Off the record discussion between Defendant and Counsel)

15            THE DEFENDANT:  Yes.

16    BY THE COURT:

17    Q    I'm sorry?

18    A    Yeah.

19    Q    Is it fair to say that counsel has given you some idea as

20    to how you might fare under the guidelines?

21        (Off the record discussion between Defendant and Counsel)

22            THE DEFENDANT:  Yes.

23            THE COURT:  Okay.  Could you give me some rough idea

24    what the base offense level would calculate out to be?

25            MS. NAVICKAS:  Your Honor, I don't believe that we've

K. Rusin                                          Parsley Associates Inc

1    reached 100 percent agreement.  But if you do look at the

2    complaint, ——

3                THE COURT:  Just some idea of your current thinking.

4                MS. NAVICKAS:  —— in at least one transaction we're

5    talking about in the range of 250 to 300 grams, so at least as

6    to that one transaction we're talking about a level 26, which is

7    63 to 78 months, which would be reduced by three levels to 46 to

8    57 months, although there are some other complications, and we

9    have had discussions with defense counsel.

10               THE COURT:  Right.

11   BY THE COURT:

12   Q    Well, that's not binding on the U.S. Attorney.  You must

13   understand that.  It's certainly not binding on me.  It gives

14   you some idea as to what she is thinking at this time, to

15   supplement, if you will, your attorney's —— your discussions

16   with your attorney.  Now, the point of the matter is I cannot

17   tell you today what sentencing range I will compute.  I don't

18   know enough about you, and I know relatively little about your

19   role in this particular matter.

20               I won't, therefore, be in a position to do that until

21   after I have received the presentence report, an important

22   document prepared by the Probation Department with your input,

23   counsel's input and guidance, as well as the United States

24   Attorney's and her investigative agencies.  That report will

25   contain information about you, the offense, any relevant

K. Rusin                                           Parsley Associates Inc

1  conduct.  It will contain personal background and history about

2  you.    It  will  also  contain  the  Probation  Department's

3  recommended sentencing range under the guidelines.

4          When  I  receive  that  report  —  after,  by  the  way,

5  you've seen it — I will hear from counsel, apply the guidelines

6  as I understand them, resolve any material factual disputes that

7  may exist between the parties, and calculate a sentencing range.

8  Ordinarily, I am required to sentence you at some point within

9  that range.  Do you understand that?

10  A    Yes.

11  Q    I do have some authority — limited authority, I should

12  emphasize — to impose a sentence that is either above or below

13  the  range.    We  refer  to  these  as  departures,  and  an  upward

14  departure would be a sentence, a more severe sentence, above the

15  guidelines range; a downward departure, a more lenient sentence

16  below  the  guidelines  range.    As  I  told  you  earlier,  there  are

17  conditional  rights  of  appeal,  possible  rights  of  appeal,  that

18  you enjoy.

19          One is if I upwardly depart in your case, Mr. Gallina,

20  you  would  have  the  right  to  appeal  the  sentence  to  a  higher

21  court,  and  the  fees  and  expenses  associated  with  that  appeal

22  would be paid by the Court pursuant to the terms and authority

23  of the Criminal Justice Act.  Do you understand that?

24  A    Yes.

25  Q    You should understand the U.S. Attorney has a comparable or

K. Rusin                                            Parsley Associates Inc

1    parallel right to appeal a downward departure. There's a second
2    possible right of appeal, and that has to do with the actual
3    calculation of the guideline sentencing range. If you or Mr.
4    Auster thinks that I have made a mistake, legally or factually,
5    in calculating the guidelines range to your detriment, you may
6    appeal the sentence on that basis, as well. Do you understand
7    that?

8    A    Yes.

9    Q    And here, too, the Government enjoys a comparable right of
10   appeal in the event they feel that their interest has been
11   adversely affected by an apparent error in the Court's
12   calculation. Do you understand that?

13   A    Yes.

14   Q    I should emphasize to you that if you feel that I've made
15   a mistake adverse to your interest in calculating the guideline
16   sentence, you will not be permitted on that basis alone to
17   withdraw your plea of guilty. I should also emphasize that if
18   sentenced to a term of imprisonment, as appears quite likely in
19   light of the nature of the offense, you will not be released on
20   parole. Parole has been abolished for guideline sentences. Do
21   you understand that?

22   A    Yes.

23   Q    Do you have any questions about any of the material we've
24   covered to this point?

25   A    No.

1    Q    Are you ready to plead?

2    A    Yes.

3         THE COURT:  Any reason, Mr. Auster, as to why we

4    should not proceed?

5         MR. AUSTER:  No, Your Honor.

6         THE COURT:  Ms. Navickas?

7         MS. NAVICKAS:  No, Your Honor.

8    BY THE COURT:

9    Q    What is your plea to Count 26 of indictment 95-CR-438,

10   guilty or not guilty?

11   A    Guilty.

12   Q    Are you pleading guilty voluntarily?

13   A    Yes.

14   Q    Of your own free choice?

15   A    Yeah.

16   Q    Has anyone put pressure or —

17   A    No.

18   Q    — forced you in any way to plead guilty?

19   A    No.

20   Q    Has anybody made any promises to you that are not reflected

21   —

22   A    No.

23   Q    — in the plea agreement?

24   A    No.

25   Q    Has anybody given you any assurance, Mr. Gallina, as to

K. Rusin                                    Parsley Associates Inc   

1    what I will do on sentence?

2    A    No.

3    Q    Finally, then, sir, it is alleged in Count 26 that you and

4    others conspired to distribute and to possess with intent to

5    distribute heroin and cocaine during the period October '92

6    through November 1994.  Did you do that?

7    A    Yes.

8    Q    Tell me about it.

9    A    Me to tell you what happened?

10   Q    Yes, sir.

11   A    I was talking to Mr. Candella, and he asked me that he

12   wanted —— he wanted to buy some heroin and whatever, but it

13   never happened.

14   Q    He offered to sell you some heroin?

15   A    No, he asked me that he wanted to buy it.  He wanted to buy

16   it.

17   Q    He wanted to buy.

18   A    Yeah.

19   Q    And did you ——

20   A    And I told him as soon as I have, I give it to him, but I

21   never did.

22   Q    This conspiracy allegedly existed for slightly in excess of

23   two years.  Was this an ongoing kind of relationship?

24   A    No, couple times.

25        (Off the record discussion between Defendant and Counsel)

K. Rusin                                            Parsley Associates Inc  

1     THE DEFENDANT: Just — I gave him a sample one time.

2  That's — I was given the stuff.  I never sold it to him.  I

3  never did.

4  BY THE COURT:

5  Q   So this involves one sample?

6  A   Um hmm.  Yeah, but then I give another one to Bonella.

7  Q   Uh huh.  And were you — how were you doing this?  Were you

8  supplying them and they were selling it and splitting the

9  proceeds?  What was —

10  A   I never did it.  Just a sample.

11  Q   So only two samples.

12  A   Exactly I don't remember.  But what I'm thinking it's a

13  couple samples.

14     (Off the record discussion between Defendant and Counsel)

15     THE DEFENDANT: Your Honor, I got a sample from Queens

16  from Mr. Gallina, Giuseppe, and then I bring it to Candella, and

17  we never made the deal.  Then I give another one to Bonella.

18  BY THE COURT:

19  Q   What was the deal to have been?

20  A   What do you mean?  I mean —

21  Q   Did you have an agreement with Mr. Canella — Candella, I

22  mean?

23  A   Well, he told me that he wanted to buy — whatever — he

24  didn't — I gave him the sample.  He wanted to know when I would

25  bring it to him, so I told him I'll let you know, when I have it



1    I'll call you.

2    Q    And who'd you get it from, Bonella?

3    A    No, Giuseppe Gallina.

4    Q    Uh huh.  And were you ——

5         THE COURT:  Ms. Navickas, I mean, we're not even —— I

6    don't know what I have here.

7         MS. NAVICKAS:  Your Honor, ——

8         THE COURT:  Do I have a conspiracy, or a buy sell

9    agreement?  I just don't know.

10        MS. NAVICKAS:  Your Honor, over a period of time, Mr.

11   Candella was attempting to get supplies of cocaine and heroin

12   from various sources.  At some point, he spoke with Mr. Gallina,

13   either to Mr. Gallina personally or through intermediaries.  If

14   you look at the complaint, in October of '93, Bonello [phonetic]

15   and Mr. Gallina showed up and met with the —— with Mr. Candella

16   and the cooperating witness.  There was a discussion, and Mr.

17   Bonella [phonetic] gave Candella two samples at that time.

18        One was a supply of heroin that —— he could get 300

19   grams of it.  The other was a supply that he could get 250 grams

20   of heroin.  As time went on, Mr. Candella would also continue to

21   approach Mr. Gallina about obtaining more heroin, and they had

22   other discussions, and my —— if you look at the complaint,

23   there's another discussion in March about a possible sale, but

24   Mr. Candella I don't believe was as specific, necessarily,

25   always as to which quantity he wanted.  He basically wanted

K. Rusin                                            Parsley Associates Inc

1   heroin in whatever quantities were available.

2        So specifically, with respect to the guidelines range

3   that I talked about, I was referring to the October of '93 count

4   in the complaint, and the discussion was about 250 to 300 grams

5   of heroin at that specific time.

6   BY THE COURT:

7   Q    So you had an agreement with Mr. Candella that you would

8   supply him with a sample as a part of an arrangement to sell him

9   up to 250 grams?

10  A    Yes.

11  Q    And your source for that sample was who?

12  A    Where I get it from?

13  Q    Yes.

14  A    Giuseppe Gallina.

15  Q    So you and Mr. ——

16  A    We call him Felipe, because I get confused with him.

17  Q    You and Giuseppe Gallina were providing a sample in the

18  hopes that he would then make a purchase and you could ——

19  A    No, he gave it to me.  He give it —— I don't know where he

20  got it from.  He has it.  He gave it to me, and then I bring for

21  Candella.

22  Q    Uh huh.  And then if Candella had liked it, he would have

23  then purchased it?

24  A    He liked it, but I never —— we never happen to make the

25  deal.

K. Rusin                                    Parsley Associates Inc 

1  Q    And this happened a couple of times?

2  A    With Candella, only one time, that time.  Then he — the

3  first time he see me, I give him.  The second time, then — that

4  he wanted to know why two weeks I never showed up to give it to

5  him.  I says I don't have it yet, when I have I give it to you.

6  Q    Is it fair to say that you and Giuseppe Gallina were more

7  successful with other purchasers?

8      (Off the record discussion between Defendant and Counsel)

9          THE DEFENDANT:  No.  I only get samples, I give it to

10  Joe, whatever, but I never sold anything to other people.

11      (Off the record discussion between Defendant and Counsel)

12  BY THE COURT:

13  Q    So you agreed with Giuseppe Gallina and with Mr. Candella

14  that you would — when these substances were available, that you

15  would supply them to him, —

16  A    Yes.

17  Q    — and that he might thereafter make a purchase?

18  A    [No audible response]

19          MR. AUSTER:  Say yes.  Don't just shake your head.

20  Say yes.

21          THE DEFENDANT:  Yes.

22  BY THE COURT:

23  Q    Is that right?  And presumably, you would have made some

24  money behind all of this.

25  A    If I were to make money on this?



1    Q    Yes.

2    A    If I would have did it, yes.

3    Q    Yes.  Right?

4    A    Yes.

5    Q    Where'd this take place?

6    A    Where it took place?  It happen on 20th Avenue, 62nd?

7    Q    In Brooklyn?

8    A    When I give him the —

9         MR. AUSTER:  What county?

10        THE DEFENDANT:  Oh, Brooklyn.

11        THE COURT:  All right.  Ms. Navickas?

12        MS. NAVICKAS:  Your Honor, we have nothing to add at

13   this point.  We do believe that there were conversations and

14   there was an agreement, at the very least, in that October '93

15   deal to supply at least 250 to 300 grams of heroin, and a sample

16   was produced by Mr. Gallina in connection with that as part of

17   that agreement.

18   BY THE COURT:

19   Q    Is that correct?

20   A    Yeah.

21        THE COURT:  Based on the information given to me, I

22   find that the defendant is acting voluntarily, fully understands

23   his rights and the consequences and possible consequences of his

24   plea, and that there is a factual basis for the plea of guilty.

25   I therefore accept the plea of guilty to Count 26 of indictment



1  95-CR-438, and I urge you to cooperate, sir, with the Probation

2  Department in the preparation of the presentence report.

3          I will return the original plea agreement to the

4  United States Attorney, Court Exhibit 8, for safekeeping in her

5  file.

6          MS. NAVICKAS:  Thank you, Your Honor.

7          THE COURT:  All right.  The clerk of the Court should

8  indicate that motions previously filed for discovery and

9  inspection, suppressing oral statements, suppressing physical

10  evidence, are — and for other relief, as indicated in the

11  notice of motion, is hereby withdrawn.  Anything further?

12          MS. NAVICKAS:  No, Your Honor.

13          THE COURT:  Mr. Auster?

14          MR. AUSTER:  No, Your Honor.

15          THE COURT:  Thank you, folks.

16      (Pause in proceedings)

17          THE CLERK:  July 19th at 9:30.

18          *     *     *     *     *

19          I, KRISTIN M. RUSIN, do hereby certify that the

20  foregoing is a true and accurate transcript of the proceeding in

21  the matter of USA versus Gallina.

22  5-20-96

K. Rusin                                     Parsley Associates Inc